J-S67021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW ALEXANDER BECKMAN | : | |
| | : | |
| Appellant | : | No. 635 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 14, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003365-2015

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 08, 2020**

Appellant, Matthew Alexander Beckman, appeals from the February 14, 2019 Judgment of Sentence entered in the Berks County Court of Common Pleas following his conviction of three counts of Dissemination of Photography/Film of Child Sex Acts, forty counts of Child Pornography, and one count of Criminal Use of a Communication Facility.[1]  After careful review, we affirm Appellant's Judgment of Sentence.

The relevant underlying facts are as follows.  On June 3, 2015, Special Agent Daniel Block, who was investigating the sharing of child pornography, traveled to 17 Eshbach Lane, Bechtelsville, Pennsylvania, to execute a search warrant.  A resident of 17 Eshbach Lane permitted agents to connect a police

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6312(c), 6312(d), and 7512(a), respectively.

computer device, also known as a Fluke, to her router and wireless connection to determine whether any computers or devices had been connected to her open wireless network. Walking along Eshbach Lane, Agent Justin Leri used the device and found a signal strength outside of 15 Eschbach Lane, which is located next to 17 Eshbach Lane. The signal indicated that a device inside of 15 Eshbach Lane was connected to the wireless connection originating at 17 Eshbach Lane. Agents found no other signal strengths on Eshbach Lane.

15 Eshbach Lane is a duplex, with two white front doors, but only one mailbox out front with the number "15" marked on it.[2]

Agents knocked on the door on the left side of 15 Eshbach Lane, and Appellant answered the door. Appellant informed the agents that only the left side of the duplex was occupied. Appellant stated that he did not have direct access to internet, but that he did have two devices, including a laptop, that could connect to an open wireless network. He said that his family members occasionally connected to an open signal that they could pick up in their house. Agents asked Appellant if they could search the internet-capable devices that Appellant mentioned and Appellant declined. Agents informed Appellant that the investigation centered on child pornography and that they were obtaining a warrant to search the premises. The agents then left Appellant's residence.[3]

---

[2] The United States Post Office has registered two separate addresses for 15 Eshbach Lane: "15A" and "15B."

[3] Shortly after the agents left, they observed that two devices disconnected from the wireless network emanating from 17 Eshbach Lane.

Special Agent Joe Purfield spoke to Appellant's wife outside the residence. She related that her residence did not have internet access but confirmed that she and her husband connect to the internet through their neighbor's open wireless network. She further related that her husband has a laptop that he uses regularly.

At approximately 2:45 p.m., agents obtained a search warrant for 15 Eshbach Lane. Immediately thereafter, they executed the search warrant, recovering several hard drives and thumb drives, as well as a laptop with a hard drive missing. The law enforcement agents recovered images and videos of child pornography from a thumb drive and the hard drives. They also recovered from the hard drives chat messages between Appellant and his wife. In those chat messages, Appellant and his wife engage in role play where he expresses sexual interest in a minor and refers to his wife as little girl, and she responds as if she were his daughter rather than his wife. The agents seized all of these items from the left side of 15 Eshbach Lane, the same side from which Appellant initially answered the door and spoke with the agents.

The Commonwealth charged Appellant with the above crimes, and on August 28, 2015, Appellant filed an Omnibus Pretrial Motion to suppress evidence seized from his home, and testimony about allegedly privileged chat messages between Appellant and his wife obtained from Appellant's electronic devices. Appellant asserted in his Motion that the search warrant pursuant to which the police searched his home and seized incriminating evidence was "constitutionally defective [and had been] issued without probable cause."

Pretrial Motion, 8/28/15, at 1. In particular, Appellant complained that the warrant was defectively overbroad because, while it lists the property to which it applies as "15 Eshbach Lane, Bechtelsville, Washington Twp, Berks County, PA 19505-9008 (left door only)," it failed to specifically limit the search of the interior of the premises to the "left door" side of Eshbach Lane. *Id.* at 3. Appellant also averred that the affidavit filed in support of the warrant application was "so deficient, defective[,] and lacking that the magistrate who signed the warrant could not possibly have fairly evaluated the existence of probable cause." *Id.* at 3.

Further, Appellant asserted that the chat messages containing allegedly "confidential statements and observations" made by his wife were privileged pursuant to 42 Pa.C.S. § 5914.[4] *Id.* at 1, 5.

On October 13, 2015, the suppression court held a hearing on the Motion. At the hearing, the Commonwealth presented the testimony of Special Agents Kurt Smith, Daniel Block, Justin Leri, and Joseph Purfield. Appellant's wife also testified. Relevantly, Agent Block testified that the agents made contact with Appellant on the left side of the duplex located at 15 Eshbach Lane and that the right side of the duplex is not habitable. N.T., 10/13/15, at 22. Agent Block testified that Appellant informed him that 15 Eshbach Lane was only one residence. *Id.* He also testified that 15 Eshbach Lane has one mailbox with the number "15" displayed on it. *Id.* at 22-23.

_____

[4] 42 Pa.C.S § 5914, "Confidential communications between spouses," sets forth the marital privilege.

- 4 -

Agent Block testified that he applied for and executed the search warrant on 15 Eshbach Lane. *Id.* at 24-25. He further testified that all of the items seized from the residence originated in the left side of the duplex—the same side of the residence from which Appellant answered the door. *Id.* at 27.

Following the hearing, the suppression court denied Appellant's Motion, finding that the description of the location in the search warrant was sufficiently specific and, therefore, not constitutionally overbroad. With respect to Appellant's marital privilege claim, the court found it in the nature of a Motion *in Limine*, and indicated that it would rule on it if Appellant raised it as such at the time of trial.

On February 5, 2018, the Commonwealth filed a Notice of Intent to Introduce Chat Messages at Trial and Motion for Pre-Trial Ruling, seeking to introduce as evidence transcripts of chat messages between Appellant and wife. The Commonwealth represented that Special Agent Joseph Purfield had found several pages of chat messages on Appellant's electronic devices seized pursuant to the June 18, 2015 search warrant. Notice, 2/5/18, at ¶¶ 1-3. The Commonwealth argued that the spousal privilege did not protect the chat messages because Appellant's wife would not be the person testifying as to their contents. *Id.* at ¶ 6.

On February 12, 2018, the trial court granted the Commonwealth's Motion, permitting the Commonwealth to introduce the chat messages and testimony pertaining to them as evidence.

Appellant's trial commenced on July 31, 2018. Relevant to the instant appeal, the Commonwealth offered the testimony, over Appellant's objection, of Special Agent Purfield, an expert in computer forensic analysis, concerning the content of chat messages between Appellant and his wife. N.T., 10/10/18, at 508-23.

On October 11, 2018, the jury convicted Appellant of the above crimes. On February 14, 2019, the trial court sentenced Appellant to an aggregate term of four to eleven years' incarceration followed by twenty-one years of probation.

Appellant filed a Post-Sentence Motion to Modify Sentence. The court held a hearing on the Motion, after which, on April 9, 2019, it modified Appellant's sentence as to the special conditions for sex offenders.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Whether the [t]rial [c]ourt erred by denying Appellant's Omnibus Pretrial Motion in that the evidence recovered as a result of the search warrant should have been suppressed because the warrant was invalid due to a lack of specificity?

2. Whether the [t]rial [c]ourt erred by not precluding the admission of the chat logs between [Appellant] and [wife], who were husband and wife, under the spousal privilege [statutes,] Title 42, §[§] 5913 and 5914.

Appellant's Brief at 64.

In his first issue, Appellant claims that the trial court erred in denying his Motion to Suppress because the warrant pursuant to which the police

collected incriminating evidence against him was unconstitutionally overbroad. *Id.* at 78. In particular, Appellant argues that the warrant was faulty because it only "specified an entry point into the duplex but did not limit the search of the interior." *Id.* Appellant claims that because the police had made contact with Appellant on the left side of the duplex, they lacked probable cause to search the whole duplex. *Id.* at 79. To be clear, Appellant does not allege that the police did, in fact, search or obtain evidence from both sides of the duplex. He argues only that, because the warrant lacked sufficient particularity, the police could have searched the entire duplex, which rendered the search warrant overbroad.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review over an order denying suppression requires us to consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the suppression hearing record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, as here, where the appeal ... turns on allegations of legal error, the suppression court's conclusions of law are not binding as it is this Court's duty to determine if the suppression court properly applied the law to the facts. Therefore, the legal conclusions of the lower courts are subject to our plenary review.

*Commonwealth v. Turpin*, 216 A.3d 1055, 1060 (Pa. 2019) (citations and internal quotation marks omitted).

Further, Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

(H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

A search warrant must name or particularly describe the place or person to be searched. Pa.R.Crim.P. 205. "A search warrant directed against [a] . . . multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units." **Turpin**, 216 A.3d at 1061 (emphasis removed and citation omitted).

The particular description "must be as particular as reasonably possible." **Commonwealth v. Belenky**, 777 A.2d 483, 486 (Pa. Super. 2001). Where there is a question as to the validity of a search warrant based on the particularity of the place described, the question is whether the description "affected probable cause or the ability to identify the premises to be searched." **Id.** at 487. In order to determine whether a search warrant describes a place with sufficient particularity, the court should use a "practical common-sense approach." **Commonwealth v. Carlisle**, 534 A.2d 469, 472 (Pa. 1987).

Instantly, the "specific description of premises to be searched" on the search warrant acknowledges that the building is a duplex, with the black number "15" on the white front door. The search warrant specifically authorizes police to search the premises located at the physical mailing address "15 Eshbach Ln., Bechtelsville, Washington Twp, Berks County, PA

19505-9008 (**left door only**)." Application for Search Warrant and Authorization, 6/18/15, at 1 (emphasis added). Additionally, the testimony at the hearing on the Motion to Suppress revealed, and Appellant does not dispute, that: (1) all of the communication between the police and Appellant took place on the left side of the duplex; (2) the agents only searched the left side of the duplex; (3) all of the seized evidence originated from the left side of the duplex, and (4) Appellant represented that the duplex was one home.

Applying the "practical, common-sense" approach, we conclude that the trial court properly found that search warrant described the location with sufficient particularity as to "preclude a search of other units." *See Turpin*, 216 A.3d at 1061; *Carlisle*, 534 A.2d at 472. Thus, the trial court did not err in finding that the search warrant was not constitutionally overbroad. Appellant, is, therefore, not entitled to relief on this claim.

In his second issue, Appellant claims that the trial court erred in granting the Commonwealth's Motion *in Limine*, which permitted the admission of the chat message logs between Appellant and his wife and Special Agent Purfield's testimony about them. Appellant's Brief at 83-85. Appellant argues that these one-on-one communications between him and his wife are "precisely the type of conversation that [42 Pa.C.S. § 5914] seeks to shield from public perusal." *Id.* at 83-84.

In Pennsylvania, confidential marital communications are protected from disclosure in criminal proceedings:

§ 5914. Confidential communications between spouses

> Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted **to testify** to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S. § 5914 (emphasis added). This privilege prevents a spouse from testifying against the defendant-spouse regarding "any communications which were confidential when made and which were made during the marital relationship." *Commonwealth v. Davis*, 121 A.3d 551, 556 (Pa. Super. 2015) (citation omitted).

Relevantly, this Court has held that the Commonwealth may introduce at trial correspondence from one spouse to another as long as the Commonwealth did not obtain it from the spouse. *Commonwealth v. Skibicki*, 586 A.2d 446, 450 (Pa. Super. 1991). Stated another way, the Commonwealth is not precluded from introducing marital communications provided by a third party. *Id.*

In the instant case, the police discovered the chat messages between Appellant and his wife while searching Appellant's electronic devices pursuant to a valid warrant. The Commonwealth then introduced the chat messages to the jury by way of the testimony of Special Agent Purfield. Because the Commonwealth did not obtain the chat messages from Appellant's wife and did not introduce them into evidence through Appellant's wife's testimony, but instead by a disinterested third person, Section 5914 does not protect as the chat messages. Accordingly, the trial court did not err in permitting the

Commonwealth to introduce this evidence over Appellant's objection, and Appellant is not entitled to relief on this claim.[5]

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/08/2020

---

[5] To the extent that Appellant also alleges in his Statement of Questions Involved that the trial court erred in permitting the Commonwealth to introduce the chat messages pursuant to 42 Pa.C.S. § 5913, our review indicates that he raised this issue for the first time in his Statement of Questions Involved and does not provide any argument in support of this claim in the Argument section of his Brief. Accordingly, we decline to address it. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.). Even if Appellant had raised this issue before the trial court, his failure to develop it in his Brief, would result in waiver. *See Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) (reiterating that claims that an appellant fails to developed with argument or citation to controlling authority are waived).